UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAMUEL A. COX,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN D. THIE, individually and as Benewah County Prosecutor; TRAVIS HUNTER and TRISHA HUNTER, husband and wife, and the marital community comprised thereof,<br><br>Defendant. | Case No. 2:22-cv-00199-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

This case arises from two arrests of Plaintiff Samuel A. Cox, in Benewah County, Idaho, the first occurring in May 2020 and the second in August 2020. Cox alleges he was arrested and jailed without probable cause based on Defendant Trisha Hunter's complaints and that Defendant Benewah County Prosecutor Brian Thie engaged in judicial deception to prosecute Cox. Cox asserts the arrests violated his constitutional rights and alleges 42 U.S.C. § 1983 claims against Thie in his capacity as a prosecutor for the State of Idaho. In support, Cox contends the criminal complaints Thie filed omitted key facts and led to Cox's arrest without probable cause. Cox also brings a state law claim for malicious prosecution against Mrs. Hunter[1] based on her complaints about him to the Benewah County Sheriff's Department.

---

[1] Cox only asserts claims against Trisha Hunter, acting on behalf of the marital community comprising herself and her husband, Travis Hunter. Cox, however, does not allege any individual claims against Mr. Hunter.

**MEMORANDUM DECISION AND ORDER - 1**

Both Thie and Mrs. Hunter move for summary judgment. The Court finds oral argument would not significantly aid its decision-making process and decides the motions on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). *See also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed below, the Court grants both Thie's and Mrs. Hunter's summary judgment motions.

## I. BACKGROUND

**A.   Factual Background**[2]

### 1.   2020 Civil Protection Order

The Hunters reside in Fernwood, Idaho with their sons, including D.H., who is a minor. (Dkt. 28-4, T. Hunter Decl. ¶ 2). In 2018, Cox acquired property adjacent to the Hunters' property. Around the same time, Cox's brother also acquired property adjacent to the Hunters' property. (Dkt. 35-4 at p. 2, D. Cox. Decl. ¶ 2). The parties access their respective properties via mutual easements across Poplar Drive, Sapling Lane, and the East Bypass Road.

In early 2020, a conflict arose between Cox and the Hunters concerning the use and maintenance of the roads subject to the mutual easements. (Dkt. 28-4, T. Hunter Decl. ¶ 5). Cox contends he was attempting to improve drainage on the roads by clearing ditches and raising the roadbeds to reduce flooding. (Dkt. 35-4 at p. 30, 03/09/2020 S. Cox Decl. ¶ 8). He claims "[t]he purpose and effect of his efforts was to eliminate flooding of the easement roads." (Dkt. 35 at p. 2).

---

[2]   Thie asks the Court to take judicial notice of court-certified documents filed in connection with the criminal complaints against Cox in the First Judicial District of the State of Idaho, in and for the County of Benewah. (Dkt. 27-1 at pp. 4-5). *See State of Idaho v. Samuel Allen Cox*, CR05-20-332; CR05-20-575. The Court finds these documents meet the criteria for judicial notice under Rule 201 of the Federal Rules of Evidence and grants Thie's request to judicially notice them.

The Hunters, on the other hand, characterize Cox's conduct as "a pattern of agitating [them] and the neighboring property owners." (Dkt. 28-4, T. Hunter Decl. ¶ 8).

The conflict escalated between Cox and the Hunters, and in February 2020, Mrs. Hunter filed a sworn petition for a protection order, in which she asserted that "[Cox] is our neighbor and he is causing problems with our legal easement of the road leading to our residence." (Dkt. 28-3 at p. 22). In this same petition, Mrs. Hunter outlined a series of incidents involving Cox and his "run-ins" with the Hunters and his other neighbors. Some of the allegations included that: (1) in April 2019, Cox threatened the Hunters' children while they were four-wheeling; (2) in January 2020, Cox threatened Mr. Hunter based on the Hunters' use of the Sapling Road; (3) in January 2020, Cox "menacingly" drove by the school where Mrs. Hunter works; (4) in February 2020, Cox "followed" Mrs. Hunter from the school to a local pharmacy; (5) in February 2020, Cox sicced his dog on a neighbor, who was walking her dogs with her children; and (6) in February 2020, Cox told another neighbor Cox would "kill" the Hunters if he saw them working on or using the Poplar Drive and Sapling Lane roads. (*Id.* at p. 6, T. Hunter Dep. 33:12-19).

Cox denies that he threatened the Hunters' children or Mr. Hunter, "menacingly" drove by the school where Mrs. Hunter works, or followed her to the local pharmacy. (Dkt. 35-4 at 30-32, 03/09/2020 S. Cox Decl. ¶¶ 7-16). Cox admits, however, that he did attempt to sic his dogs on a neighbor and frightened her. (*Id.* at p. 6, ¶ (v)). Regarding his statement that he would "kill" anyone who messed with the roads, Cox does not recall saying it, but if he did, "it was totally meant as a figure of speech [he] would have used to describe [he] was upset." (*Id.* at p. 30, ¶ 5).

In March 2020, a Benewah County Magistrate Judge, the Honorable Douglas Payne, entered a protection order against Cox after a full hearing. The protection order prohibited Cox from interfering with the Hunters' ingress and egress to their property; in relevant part, it ordered

**MEMORANDUM DECISION AND ORDER - 3**

that "[Cox] shall not do anything to interfere with [the Hunters'] ingress or egress to their home and shall not do anything to the road they use for that purpose which degrades their access to any significant degree." (Dkt. 28-3 at p. 37, Trisha Hunter Deposition; Dkt. 27-4 at p. 7, Exhibit 1 to Fegert Declaration). Further, the order prohibited Cox from going within 100 feet of the Hunters and their children, except for "incidental, unintentional contact . . . so long as in the ordinary course and not intentionally extended or used to communicate." (*Id.*).

### 2. May 2020 Arrest

In April 2020, Cox dug ditches along both sides of the East Bypass Road, piled dirt on the road, and plugged culverts along the roadway. Mrs. Hunter reported Cox's conduct to the Sheriff's Department, and Benewah County Sheriff's Deputy Brandon Vannatter responded to Mrs. Hunter's report. (Dkt. 27-3 at p. 2, Vannatter Decl. ¶¶ 4, 5). Deputy Vannatter was familiar with Cox "from responding to numerous previous incidents and other complaints" from the Hunters, other neighbors, and surrounding businesses. (*Id.* ¶ 7). According to Deputy Vannatter, the issues with Cox and his neighbors "had been ongoing for several years." (*Id.*).

In response to Mrs. Hunter's report, Deputy Vannatter initially spoke with Mrs. Hunter. (*Id.* at ¶ 5). She told him the Hunters had a protection order against Cox prohibiting him from interfering with the ingress or egress to their property. (*Id.*). Mrs. Hunter further explained Cox had been digging ditches along both sides of the road leading to their property and piling dirt on road. (*Id.*). Then, Deputy Vannatter viewed and photographed "the roads [Cox] had been damaging." (*Id.* ¶ 6). In Deputy Vannatter's view, Cox had made both Sapling Lane and the East Bypass Road impassable. (*Id.* at p. 44, Vannatter Dep. 53:2-20). Deputy Vannatter also spoke with Cox. According to Deputy Vannatter, Cox refused to speak with him in a civil manner and "became uncooperative and aggressive." (Dkt. 27-3 at p. 3, Vannatter Decl. ¶ 5).

**MEMORANDUM DECISION AND ORDER - 4**

Based on Deputy Vannatter's independent investigation into Mrs. Hunter's complaint, Deputy Vannatter concluded Cox had violated the protection order. He prepared an incident report regarding his investigation and Cox's violation of the protection order. (Dkt. 27-3 at p. 2, Vannatter Decl. ¶ 9). In his report, Deputy Vannatter requested that charges be brought against Cox for violating the protection order. In support, Deputy Vannatter also prepared a probable cause affidavit. (*Id.*).

On April 28, 2020, Dennis Clayton, an attorney who represented Cox, contacted Thie. (Dkt. 27-2 at p. 2, Thie Decl. ¶ 6). Clayton asked Thie if he would meet to discuss the conflict with the Hunters before charging Cox with any crimes. (*Id.*). Thie agreed to meet on-site with Cox and Clayton to observe first-hand the conditions of the roads and the Hunters' ingress and egress. Thie's understanding of the meeting's purpose was to gather information to determine whether to make a charging decision. (*Id.* ¶¶ 7, 10).

Thie met with Clayton to briefly discuss the issues involving Cox and the Hunters before proceeding to the property to meet with Cox and his mother. (Dkt. 27-2 at p. 2, Thie Decl. ¶ 6). While there, Thie observed Cox "had severely ditched along both sides of Poplar Road, cutting off access to the Hunters' secondary access road, and piled mud onto the roadway"; the road "had been ditched out crudely and deeply and there was deep mud along the sides of the road"; and the cattleguard at the intersection of Poplar and Big Carpenter Creek was packed full of dirt and rock. (*Id.* at ¶ 11). After observing the roads, Thie discussed with Clayton ways to restore the East Bypass Road to the Hunters' residence. (*Id.* at ¶ 12).

Then Thie spoke with Mr. Hunter about his discussion with Clayton. (Dkt. 27-2 at p. 4, Thie Decl. ¶ 13). Mr. Hunter offered to provide PVC pipe for a culvert if Cox agreed to install the culvert and repair the road, and Thie conveyed this offer to Clayton. (*Id.* ¶ 14). According to Thie,

by the conclusion of his visit, nothing had been decided, and Cox had neither agreed nor offered to restore the road, except for spreading rock and gravel. (Dkt. 27-2 at p. 4, Thie Decl. ¶ 15). Thie described Cox as "uncooperative, agitated and aggressive" during the visit and said Cox "refused to have anything to do with cleaning up the mess he had made, putting in the culvert or cleaning out the cattleguard." (*Id.*). Conversely, Cox contends he eventually agreed to fix the road. (Dkt. 39, Clayton Decl. ¶ 26). Regardless, when Thie returned to his office, he found a note stating Clayton had called to report Cox would install the PVC pipe if the Hunters provided it. (Dkt. 27-2 at p. 2, Thie Decl. ¶ 17). Thereafter, Thie exchanged emails with Clayton indicating Thie was expecting Deputy Vannatter's report; it would include a referral for charges; but Thie hoped the matter could be resolved without charging Cox. (*Id.* at p. 113).

On or about May 6, 2020, Thie received Deputy Vannatter's incident report and probable cause affidavit stating Cox interfered with the Hunters' ingress and egress. (*Id.* at p. 5, Thie Decl. ¶ 20; Dkt. 35-2 at p. 123-26, Vannatter Report). Deputy Vannatter's report also included several complaints by other individuals, about which Thie had previously been unaware, including complaints that Cox had damaged the roads and that he had harassed his neighbors and their children. (Dkt. 35-2 at p. 123-26, Vannatter Report). The report also stated Deputy Vannatter believed Cox had violated the order, requested that Cox be charged with violating the protective order, and requested a warrant for Cox's arrest issue. (*Id.*). Deputy Vannatter testified he made this decision without any input from Thie. (Dkt. 27-3 at p. 16, Vannatter Dep. 17:3-23).

Between meeting with Clayton and Cox and receiving Deputy Vannatter's report, Thie did not receive any information from Clayton or Cox about the status of the road repair. (Dkt. 27-2 at p. 5, Thie Decl. ¶ 22). After reviewing Deputy Vannatter's report and probable cause affidavit,

**MEMORANDUM DECISION AND ORDER - 6**

Thie evaluated the case for charges and determined probable cause existed to file criminal charges. (*Id.* at p. 6, Thie. Decl. ¶ 23).

Thie then contacted Mrs. Hunter to get information regarding the road's condition. (*Id.* at p. 6, Thie Decl. ¶ 23). Mrs. Hunter reported the road was still impassable; the rocks had not been placed over the culvert; the intersection of Poplar and Sapling had not been graded: and there was more dirt in the cattleguard. (*Id.*). Mrs. Hunter also reported that when her son and his friends had taken the PVC pipe to the road, Cox stood on his property, while looking at them, and fired several gunshots into the air. (Dkt. 27-2 at p. 6, Thie Decl. ¶ 24).

Later that same day, on May 6, 2020, Deputy Vannatter provided Thie with a supplemental report regarding Mrs. Hunter's complaint about Cox's gunfire. (*Id.* ¶ 25). Thie maintains this supplemental report did not play a role in his decision to file charges against Cox because Thie had already determined probable cause existed to believe Cox had violated the protection order. (*Id.* at ¶ 26) Thie did not speak with Cox, who maintains that he had fixed the East Bypass Road and that it was passable by May 3. (Dkt. 35-3, David Cox, Decl. ¶¶ 16-17).

Based on Deputy Vannatter's initial report and his probable cause affidavit, Thie filed a criminal complaint against Cox for violating the protection order. (Dkt. 27-2 at p. 6, Thie Decl. ¶ 26). Although Thie had talked with Clayton about Cox's repairing and restoring the roads, Thie maintains he could not ignore the protection order. (*Id.* ¶ 27). Judge Payne received the criminal complaint after it was filed, but Thie did not inform Judge Payne that Thie had met with Cox and his attorney or that Cox had agreed to restore the road. (*Id.* at p. 77, Thie Deposition, 113:5-8;117:1-14). After reviewing Deputy Vannatter's probable cause affidavit and the complaint, Judge Payne found probable cause to issue an arrest warrant and set bail in the amount

**MEMORANDUM DECISION AND ORDER - 7**

of $25,000. The criminal complaint did not contain any charges related to Cox's gunfire near the Hunter children.

### 3. Cox's Arraignment, Competency Evaluation, Commitment and Release

On May 6, 2020, Deputy Vannatter arrested Cox pursuant to the arrest warrant, and on May 7, Judge Payne arraigned him. During the arraignment, Cox launched into an expletive-laced tirade because he felt he "was ordered by the prosecuting attorney to do a physical crime." (Dkt. 35-2 at p. 106, Tr. 30-33). Cox called Judge Payne a "dickhead," a "cocksucker," and a "motherfucker"; told Judge Payne to "[s]tick it up [his] ass" when Judge Payne asked if Cox understood his rights; threatened to sue Judge Payne; and concluded his rant by saying, "Fuck you, this conversation's over . . . talk to my fucking lawyer, asshole." (*Id.* at pp. 105-06, Tr. 9, 34-53). Cox attributes his "obnoxious" behavior at the arraignment to "Thie's having apparently reneged on the Agreement struck April 28, 2020." (Dkt. 1 at ¶ 74).

At the hearing's conclusion, Judge Payne set Cox's bail at $200,000. (Dkt. 35-2 at p. 107, Tr. 54-56). Additionally, Judge Payne entered an order modifying the protection order to prohibit Cox from going "within 1000' [feet] of any of the protected persons [the Hunters and their children] or their home unless necessary for the sole purpose of ingress or egress to his own home or while in it." (Dkt. 28-3 at p. 40).

Approximately, two weeks later, Thie and Cox's attorney, Michael Palmer, appeared before Judge Payne on Cox's motion to reduce his bond. At the hearing, Palmer reported to Judge Payne that the parties had reached a settlement agreement regarding bail and a civil compromise. Judge Payne rejected the parties' proposed settlement agreement, however. In doing so, Judge Payne expressed concern about Cox's "out of control" conduct, his "mental status," and "public safety." (Dkt. 27-2). Instead, Judge Payne signed an order for a competency evaluation of Cox and

suspended all proceedings against Cox. (*Id*. at p. 8). After the evaluation, Judge Payne signed an order committing Cox to a State hospital for mental health treatment. (*Id.* at p. 122-23). A month later, Judge Payne ordered Cox released on his own recognizance and into the custody of his mother or brother. Cox returned to his home next to the Hunters upon his release. (*Id.* at p. 125-26).

        4.        **August 2020 Arrest**

On August 12, 2020, the Hunters' minor son, D. H., and his friend were driving to the Fernwood Mercantile on a four-wheeler when Cox followed them in his vehicle for several miles and approached within six feet of the four-wheeler. When the boys arrived at the Fernwood Mercantile, they entered the store, as did Cox. D. H. reported Cox stared at him and his friend while in the store - although the store's surveillance footage shows Cox was only in the store for eleven seconds while the boys were there. (Dkt. 28-3 at p. 54, D. Hunter Dep. 42:7-9). Later that day, Mrs. Hunter reported the incident to Sheriff's Department. (Dkt. 28-3 at p. 12-15, T. Hunter Deposition, 75:5-25; 78:18).

Benewah County Sherriff's Deputy Brad Hampton responded to Mrs. Hunter's report, visited with the Hunters at their home, and spoke to D. H. The next day, Deputy Hampton prepared an incident report requesting a warrant for Cox's arrest for his violating protection order and for reckless driving. In support, Deputy Hampton submitted his probable cause affidavit. Deputy Hampton did not interview Cox about the incident, however, before submitting his warrant request. (Dkt. 27-2 at p. 9, Thie Decl., ¶¶ 39-40; Dkt. 27-4 at pp. 29-32).

On August 19, 2020, Thie filed a criminal complaint against Cox for reckless driving and violating the protection order again, and Judge Payne signed a probable cause order and issued a warrant for Cox's arrest. Deputy Hampton arrested Cox at his home on August 21. (Dkt. 27-2 at

**MEMORANDUM DECISION AND ORDER - 9**

p. 9, Thie Decl., ¶ 41; Dkt. 27-4 at pp. 34-40). Three weeks later, on September 10, Mrs. Hunter contacted Thie regarding the August 12 incident to report she had video evidence of Cox tailgating the children. Thie asked Mrs. Hunter for a copy of the video. Around the same time, Cox's attorney, Palmer, contacted Thie to report Palmer had surveillance video from the boys' August 12 encounter with Cox at the Fernwood Mercantile. Thie asked for a copy of that video too. (Dkt. 27-2 at p. 9, Thie Decl., ¶ 42).

After Thie reviewed both the videos, he concluded he could not prove beyond a reasonable doubt that Cox drove recklessly during the April 12 incident. (Dkt. 27-2 at p. 10, Thie Decl., ¶ 44; Dkt. 27-2 at pp. 96-101, Thie Dep., 153:19-25; 154:1-2; 155:5-12; 157:1-14; 157:20-25; 158:1-17). Eventually, Thie and Cox's attorney negotiated to resolve the issues between the State and Cox. Ultimately, the matters against Cox were dismissed per the parties' stipulation. On December 4, 2020, Judge Payne signed orders of dismissal in both criminal matters. (Dkt. Thie Decl., ¶ 44; Dkt. 27-2 at 100, Thie Dep., 157:16-18).

**B.     Procedural History**

On May 4, 2022, Cox brought this action, alleging (1) claims against Thie under 42 U.S.C. § 1983 and asserting civil rights violations for unreasonable search and seizure, false arrest, malicious prosecution, and false imprisonment; and (2) a state law claim for malicious prosecution against Mrs. Hunter. Both Thie and Mrs. Hunter move for summary judgment. In his motion, Thie argues he has absolute immunity, or in the alternative, qualified immunity. Mrs. Hunter argues Cox cannot prove any of the elements of malicious prosecution.

## II.   LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence is insufficient. *Id.* at 252. Rather, "there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.*

In deciding a summary judgment motion, the court may consider evidence that can be judicially noticed under Rule 201 of the Federal Rules of Evidence. Under Rule 201, courts may take judicial notice of a fact which is not subject to reasonable dispute either because it: (1) is generally known within the trial court's territorial jurisdiction, or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned. Fed. R. Evid. 201(b). The Court may take judicial notice of matters of public record and government documents available from reliable sources. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). A court may also take judicial notice of another court's opinion, "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Id.* at 690.

### III.  ANALYSIS

**A.     Thie's Summary Judgment Motion**

Thie contends he is immune from liability under the doctrine of absolute immunity. Prosecutors are entitled to absolute immunity for their actions in "pursuing criminal conduct" if they were acting as "advocates for the state" and their conduct is "intimately associated with the judicial phase of the criminal process." *Waggy v. Spokane Cnty. Wash.*, 594 F.3d 707, 710 (9th Cir. 2010) (quoting *Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009)). Absolute immunity protects against claims of malicious prosecution, use of perjured testimony, and suppression of

material evidence. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "Without the promise of immunity from suit, a prosecutor would be distracted from his duties and timid in pursuing prosecutions rather than exercising the independent judgment and discretion that his office requires." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 912 (9th Cir. 2012). "At the same time, absolute immunity is an extreme remedy, and it is justified only where any lesser degree of immunity could impair the judicial process itself." *Id.* (internal quotation marks omitted) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997)).

Determining whether conduct is prosecutorial in nature is an "inexact science." *Lacey*, 693 F.3d at 912. Courts take a "functional approach" to determine whether conduct is prosecutorial, *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993), and consider the "nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988). Under this approach, the Supreme Court has held that prosecutorial conduct includes "initiating a prosecution and . . . presenting the State's case." *Imbler*, 424 U.S. at 431. As a result, absolute immunity can protect actions taken outside the courtroom and preliminary to trial. *Buckley*, 509 U.S. at 272; *see also Burns v. Reed*, 500 U.S. 478, 486 (1991) (recognizing "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom").

Absolute immunity may protect many activities taking place before a prosecution is officially instituted. *Imbler*, 424 U.S. at 431 n.33. For example, appearing in court in support of an application for a search warrant, presenting evidence at a hearing, evaluating evidence, interviewing witnesses, and preparing charging documents are all acts subject to the protection of absolute immunity. *Kalina*, 522 U.S. at 130-31; *Buckley*, 509 U.S. at 273; *Burns*, 500 U.S. at 492. Giving legal advice to law enforcement, however, is not. *Burns*, 500 U.S. at 496. Rather, a

prosecutor enjoys only qualified immunity, not absolute immunity, for investigatory, administrative, or investigative functions such as "gathering physical evidence and conducting interrogations to determine whether a crime has been committed and whether probable cause exists to arrest a suspect." *Broam v. Bogan*, 320 F.3d 1023, 1031 (9th Cir. 2003). Likewise, "a prosecutor sheds absolute immunity when she acts as a 'complaining witness' by certifying that the facts alleged within an affidavit are true." *Waggy*, 594 F.3d at 711 (citing *Kalina*, 522 at 132 (Scalia, J., concurring)).

Here, Cox asserts Thie is a "complaining witness," not a prosecutor, when he sought and procured the warrants for Cox's arrest. Citing the Supreme Court's decision in *Kalina*, Cox contends that "a prosecutor who signs a criminal complaint under oath is functioning as a witness, and not a prosecutor." (Dkt. 35-1, p. 13). This assertion, however, misconstrues the holding in *Kalina*.

In *Kalina*, the prosecutor initiated a criminal proceeding by filing three documents, each based on false facts: an information charging burglary; a motion for an arrest warrant; and a probable cause certification summarizing the evidence supporting the charge. 522 U.S. at 120-21. The Supreme Court held that absolute immunity protected the prosecutor's "activities in connection with the preparation and filing of" the information and the motion for an arrest warrant. *Id.* at 129. It explained these activities were "the work of an advocate and [were] integral to the initiation of the prosecution." *Id.* at 130. "Indeed," the Court further explained, "except for [the prosecutor's] act in personally attesting to the truth of the averments in the certification, it seems equally clear that the preparation and filing of the third document in the package was part of the advocate's function as well." *Id.* at 129.

**MEMORANDUM DECISION AND ORDER - 13**

Regarding the prosecutor's personal attestation to the facts alleged in the probable cause certification, however, the Court found the prosecutor was functioning as a witness, not as an advocate:

> Testifying about facts is the function of the witness, not of the lawyer. No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause. Even when the person who makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness.

*Id.* at 130-31. At common law, absolute immunity did not protect the function of the complaining witness. *Id.* at 127. Because the prosecutor was acting as a "complaining witness" when she personally vouched for the veracity of the statements contained in the certification, the Court held the prosecutor did not have absolute immunity.

Here by contrast, Thie did not function as a "complaining witness" when he signed the criminal complaints against Cox. Unlike the prosecutor in *Kalina*, Thie did not personally attest to the facts giving rise to probable cause. Instead, Thie relied on Deputy Vannatter's and Deputy Hampton's probable cause affidavits and their reports, which were submitted to Judge Payne with the criminal complaints, to establish probable cause and to procure the arrest warrants. When Thie filed the two criminal complaints against Cox and presented the deputies' probable cause affidavits, he functioned in his traditional role as an advocate initiating and presenting the State's case. He is, therefore, entitled to absolute immunity on all claims. *Id.* at 129; *see also Waggy*, 594 F.3d at 713 (concluding prosecutor acted "as a judicial advocate before the court" when she submitted "a motion for a bench warrant to the court applying the law to facts alleged in supporting affidavits signed by witnesses" and was entitled to absolute immunity); *Tanner v. Heise*, 879 F.2d

**MEMORANDUM DECISION AND ORDER - 14**

572, 578 (9th Cir. 1989) (concluding prosecutor had absolutely immunity for instituting prosecution).

B.   Mrs. Hunters' Summary Judgment Motion

Cox also asserts claims of malicious prosecution against Mrs. Hunter, alleging that "Mrs. Hunter's sole purpose in calling the Sheriff's dispatcher about shots fired by [Cox] five days earlier was to maliciously and intentionally cause [Cox] to have more involvement with law enforcement authorities, and thereby cause him mental anguish." (Dkt. 40 at p. 3). Cox further alleges Mrs. Hunter's conversation with Thie on May 6, 2020, was also "motivated by malice." In response, Mrs. Hunter argues Cox cannot prove any of the elements necessary to establish malicious prosecution.

Malicious prosecution is a tort which "runs counter to obvious policies of the law in favor of encouraging proceedings against those who are apparently guilty, and letting finished litigation remain undisturbed and unchallenged." PROSSER & KEETON, TORTS (5th ed.), § 119, p. 876. The interests of persons wrongfully prosecuted, however, must also be protected. Balancing these interests, actions for malicious prosecution have historically been limited by restrictions making such claims difficult to maintain. *See Badell v. Beeks*, 765 P.2d 126, 127 (Idaho 1988) ("Actions for malicious prosecution are not favored in law and, thus are limited by requiring the plaintiff to establish several elements."); *Clark v. Alloway*, 170 P.2d 425, 427 (Idaho 1946) (explaining "actions for malicious prosecution are not favored in law, hence have been hedged about by limitations more stringent than in the case of almost any other act causing damage to another").

To recover for malicious prosecution under Idaho law, a plaintiff must prove that: (1) there was a prosecution; (2) it terminated in favor of the plaintiff; (3) the defendant was the prosecutor; (4) the defendant acted with malice; (5) probable cause was lacking; and (6) the plaintiff sustained

MEMORANDUM DECISION AND ORDER - 15

damages. *Berian v. Berberian*, 483 P.3d 937, 944-45 (Idaho 2020). "To sustain an action for malicious prosecution, there must be a concurrence of malice and want of probable cause. Neither, however clearly established, will support an action in the absence of the other." *Berian*, 483 P.3d at 995 (quoting *Clark*, 170 P.2d at 428).

Cox contends Mrs. Hunter acted as "the prosecutor" by "complain[ing] to law enforcement." (Dkt. 38, 5:12-13). Although the Idaho Supreme Court has never expressly defined the term "prosecutor," it has suggested the "prosecutor" must somehow cause the plaintiff's arrest. *Berian*, 483 P.3d at 944. ("Galust and Julia asserted claims of malicious prosecution, alleging that Ovanes made a false police report that caused the two to be arrested."); *see also Moore v. United States*, 213 F.3d 705, 710 (D.C. Cir. 2000) ("In order to find that a defendant procured a prosecution, the plaintiff must establish 'a chain of causation' linking the defendant's actions with the initiation of criminal proceedings.").

The Restatement (Second) of Torts § 653, comment g provides additional guidance for determining whether a private individual may be subject to liability for malicious prosecution for providing statements to law enforcement authorities:

> A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable . . . even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

> If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information.

RESTATEMENT (SECOND) OF TORTS § 653, cmt. g (1977). Thus, comment g distinguishes between situations in which a private individual merely provides information to an official who may initiate charges in his discretion versus those in which a private individual either provides knowingly false statements to an official or directs or pressures an official to initiate charges, thereby making the officer's intelligent exercise of discretion impossible. *Id. See also Dickerson v. Monroe Cnty Sheriff's Dep't*, 114 F. Supp. 2d 187, 190 (W.D.N.Y.2000) ("It is true that civilians who merely report a crime are generally shielded from liability for the tort of malicious prosecution.").

In this case, Mrs. Hunter did nothing to bring about Cox's prosecution other than truthfully report in April 2020 that Cox had unilaterally ditched the roads and interfered with their ingress and egress in violation of the protection order. Deputy Vannatter independently viewed the roads' conditions and concluded Cox's conduct violated the protection order. Deputy Vannatter testified that he—not Mrs. Hunter—made the decision to request charges against Cox in May 2020. (Dkt. 27-3 at p. 44, Vannatter Dep. 51:4-18). Additionally, Thie independently concluded probable cause existed to arrest Cox for violating the protection order.

By contrast, both Deputy Vannatter and Thie expressly disavowed that Mrs. Hunter's May 6, 2020, report of Cox's gunfire resulted in Cox's prosecution. Rather, Deputy Vannatter requested that charges be brought against Cox for violating the protection order in his April 30, 2020 report - a week before Mrs. Hunter's report of Cox's gunfire. Similarly, Thie testified he made the decision to file criminal charges against Cox after he reviewed Deputy Vannatter's report and probable cause affidavit. According to Thie, "Deputy Vannatter's report established probable cause to believe Cox was in violation of the Court's protective order." (Dkt. 27-2 at p. 6, Thie

Decl. ¶ 26). In other words, Thie did not file charges against Cox for violating the protection order based on Mrs. Hunter's report of Cox's gunfire. Accordingly, Cox fails to provide any evidence Mrs. Hunter knowingly made any materially false statements resulting in his prosecution.

Cox also fails to establish Mrs. Hunter acted with malice for purposes of malicious prosecution. "[M]alice refers to 'the intentional commission of a wrongful or unlawful act, without legal justification or excuse and with ill will, whether or not injury was intended.'" *Bliss v. Minidoka Irrigation Dist.*, 468 P.3d 271, 286 (Idaho 2020) (quoting *Beco Constr. Co. v. City of Idaho Falls*, 865 P.2d 950, 955 (Idaho 1993)). In *Bliss*, the Idaho Supreme Court found the plaintiff failed to prove malice where "there were no materially false statements made to the Sheriff's office which affected the crime charged." *Bliss*, 468 P.3d at 286.

Likewise, here, Cox does not identify any materially false statements Mrs. Hunter made to the Sheriff's Department that "affected the crime charged," and Cox fails to show Mrs. Hunter's report of Cox's gunfire "affected the crime charged." *See id.* To the contrary, as noted above, Thie denied Mrs. Hunter's report of gunfire caused him to file criminal charges against Cox. Rather, both Thie and Deputy Vannatter concluded that probable cause existed to arrest and charge Cox for violating the protection order based on their independent investigation of Cox's ditching the road in April 2020.

Even assuming Mrs. Hunter's report of gunfire caused Cox's arrest, Cox cannot show Mrs. Hunter made any material misrepresentations. The record shows that Deputy Vannatter interviewed Mrs. Hunter with her sons, who were present when Cox discharged his firearm. Mrs. Hunters' sons described to Deputy Vannatter what occurred - not Mrs. Hunter. D. H. corroborated Mrs. Hunter's report and testified he was "alarmed" and "kind of scared" due to Cox's conduct. Moreover, Cox admits he discharged his firearm "several" times on his property to "scare" a

coyote. Based on this evidence, Cox cannot prove Mrs. Hunter materially misrepresented her report of gunfire. Accordingly, Cox has failed to show Mrs. Hunter acted with malice.

Finally, Cox's malicious prosecution claim fails because he cannot show that the prosecutions against him were initiated without probable cause. "[P]robable cause consists of a belief in the charge or facts alleged, based on sufficient circumstances to reasonably induce such belief in a person of ordinary prudence in the same situation." *Berian*, 483 P.3d at 945 (quoting *Clark v. Alloway*, 170 P.2d 425, 428 (Idaho 1946)). Under Idaho law, a magistrate judge's independent finding of probable cause, which was based on a full disclosure of the facts, precludes, as a matter of law, a finding in a malicious prosecution case that no probable cause existed. *Berian*, 483 P.3d at 945.

Here, Judge Payne found probable cause existed to issue the May and August 2020 warrants for Cox's arrest. Despite Judge Payne's probable cause finding, Cox contends that "on May 6, 2020, [Mrs. Hunter] had no reason to believe, and it can be reasonably inferred that she did not believe, that there was probable cause to think Mr. Cox firing gunshots five days earlier presented a potential danger or threat to her, her family, or her neighbors." (Dkt. 40 at p. 8). But, as Cox admits, Judge Payne did not consider Mrs. Hunter's report of gunfire to find probable cause to issue a warrant to arrest Cox for violating the protection order. Cox, therefore, cannot show there was any prosecution resulting from Mrs. Hunter's report of gunfire. Because Cox has failed to establish the requisite elements for a malicious prosecution claim against Mrs. Hunter, the Court grants Mrs. Hunter's summary judgment motion.

**MEMORANDUM DECISION AND ORDER - 19**


### C. Attorney Fees

Both Thie and the Hunters request an award of attorney fees and costs under Idaho Code § 12-121, arguing Cox failed to advance a legitimate claim for relief. Section 12-121 provides in relevant part:

> In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for an award of attorney's fees.

Idaho courts have held that § 12-121 and Rule 54(e)(1) of the Idaho Rules of Civil Procedure provide for an award of attorney fees if the Court finds a party "frivolously, unreasonably or without foundation" pursued or defended against a claim. *Ortiz v. Reamy*, 115 Idaho 1099, 1101 (Ct. App. 1989). Whether to award attorney fees under § 12-121 is within the trial court's discretion. *Management Catalysts v. Turbo West Corpac, Inc.*, 809 P.2d 487 (Idaho 1991). In this case, the Court does not find Cox brought this action frivolously, unreasonably, or without foundation and denies Defendants' request for fees.

## IV.  ORDER

**IT IS ORDERED that:**

1. Defendant Brian Thie's Motion for Summary Judgment (Dkt. 27) is **GRANTED**.

2. Defendant Travis Hunter and Trisha Hunter's Motion for Summary Judgment (Dkt. 28) is **GRANTED**.

DATED: September 03, 2024

Amanda K. Brailsford
U.S. District Court Judge